**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT D. THOMPSON,** **Plaintiff,** | : | |
| **v.** | : | **CIVIL NO. 09-6084** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant.** | : | |

**MEMORANDUM OPINION & ORDER**

**RUFE, J.** **October 18, 2012**

Plaintiff Robert D. Thompson requests review of the final decision of the Commissioner of the Social Security Administration, Michael J. Astrue ("Commissioner"), which was partially favorable to Plaintiff. Specifically, Plaintiff moves for reversal of the Commissioner's decision that, under the Social Security Act, Plaintiff did not qualify to receive disability insurance benefits ("DIB") and supplemental security income ("SSI") from his alleged disability onset date, on July 23, 2007, through his fiftieth birthday on January 21, 2009.[1] The Commissioner determined that Plaintiff qualified for benefits after reaching age 50. For the reasons that follow, and after careful review of the entire record, the parties' submissions, and the applicable law, the Court will affirm the final decision of the Commissioner.

[1] 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. PROCEDURAL HISTORY

Plaintiff, who was born on January 21, 1959, filed his applications for DIB[2] and SSI on July 23, 2007, when he was 48-years-old.[3] He claimed his ability to work is impaired by degenerative disk disease, knee injury, and deep vein thrombosis (DVT).[4]

After Plaintiff's applications for benefits were denied at the initial-review level on February 20, 2008, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").[5] ALJ Janice C. Volkman held a hearing on March 11, 2009.[6] On April 27, 2009, the ALJ ruled that Plaintiff was not disabled prior to January 21, 2009, when he was still a "younger individual," but determined that he was disabled after turning 50 years old on January 21, 2009, when he became a person "closely approaching advanced age."[7] The Appeals Council denied Plaintiff's request for review on October 23, 2009.[8] Plaintiff filed an appeal in this Court on December 21, 2009.

This Court referred the matter to Magistrate Judge Lynne A. Sitarski for a Report and Recommendation ("R & R").[9] In the R & R submitted on May 16, 2011, Magistrate Judge Sitarski recommended that the Court affirm the final decision of the Commissioner. Plaintiff

---

[2] Plaintiff had insured status for DIB through December 31, 2009.

[3] R. at 16.

[4] R. at 16.

[5] R. at 16.

[6] R. at 16.

[7] R. at 17.

[8] Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Plaintiff's Brief") at 2.

[9] <u>See</u> Local Rule of Civil Procedure 72.1.I(a), 28 U.S.C. § 636(b)(1)(B).

timely objected to the R & R, and the matter is now ready for decision.

**II. STANDARD OF REVIEW**

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[10] The court's review of legal issues is plenary, but its factual review is limited.[11] The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[12] For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] It is more than a mere scintilla, but requires less than a preponderance of the evidence.[14] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[15]

Where, as here, a Social Security appeal is referred to a magistrate judge for an R & R, the district court must review *de novo* those portions of a magistrate judge's report and recommendation to which a party has objected.[16] A court may in its discretion "accept, reject or

---

[10] 42 U.S.C. § 405(g).

[11] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[12] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[13] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[14] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[15] Fargnoli, 247 F.3d at 38.

[16] 28 U.S.C. § 636(b)(1)(c).

modify, in whole or in part, the findings or recommendations made by the magistrate judge."[17]

**III. DISCUSSION**

*A. Social Security Law*

To qualify for SSI or DIB benefits, a person must be found to have a "disability." Under the relevant provisions of the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[18] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether a disability exists.[19]

At step one, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied. If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step two whether the applicant suffers from a severe, medically determinable impairment which significantly limits her ability to work. If the applicant has such an impairment, the ALJ must determine at step three whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1 ("the Listings"),[20] or has an equivalently

---

[17] Id.

[18] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). "Disability" is defined identically in Title II and Title XVI of the Social Security Act, governing DIB and SSI benefits, respectively. Id.; see also Barnhart v. Thomas, 540 U.S. 20, 23-24 (2003).

[19] Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

[20] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

debilitating medical condition.  If an applicant's disability does meet or equal a listing, he or she is found disabled without further analysis.  If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step four whether the applicant has the Residual Functioning Capacity ("RFC") to perform her former relevant work.  A claimant's RFC is defined as the most an individual can still do in the workplace despite the physical and mental limitations caused by her impairments.[21]  If an applicant has the RFC to perform former relevant work, he or she is found not disabled at step four.  If the applicant does not have the RFC to perform her previous work, the Commissioner must establish at step five that the applicant has the RFC to perform other work that exists in the national economy, considering her age, education and work experience.  At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work, the ALJ must find the applicant to be disabled.

When an individual claims exertional limitations, at step five the ALJ may by guided by the appropriate medical-vocational guideline table, commonly known as the "grid," which accounts for vocational factors such as age, education, and transferable work skills, in addition to exertional limitations or impairments.[22]  The claimant has the opportunity to present and rebut evidence regarding each factor considered in the grid before disability is decided.  If the individual also has non-exertional limitations, or is not capable of performing a wide range of jobs at the designated exertional level (e.g. sedentary), the ALJ must look beyond the grid in

---

[21] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[22] 20 C.F.R. § 404.1520.

determining whether a claimant is disabled.[23]

*B. The Decision of the ALJ*

On April 27, 2009, the ALJ issued a partially favorable decision, in that Plaintiff was found to be eligible for benefits beginning on his fiftieth birthday.[24] In reaching her decision, the ALJ considered documentary evidence, Plaintiff's testimony, and the testimony of an independent vocational expert ("VE"). The ALJ then applied the five-step process as required by the Regulations, and found, in relevant part: 1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 23, 2007, having last worked in September 2004;[25] 2) Plaintiff suffers from degenerative disc disease with central canal narrowing, status post discectomies, status post arthroscopic knee surgery, and left leg DVT, and these impairments are severe and significantly limit Plaintiff's ability to perform basic work activities;[26] 3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing;[27] and 4) Plaintiff cannot perform his past, relevant work as a truck driver, a medium exertion, semiskilled job with no skills transferrable to sedentary work.[28] Plaintiff does not contest these findings.

At the fifth step, an ALJ must determine whether a claimant has the RFC to perform other jobs available in the national economy. In evaluating Plaintiff's RFC in this case, where Plaintiff

---

[23] Allen v. Barnhart, 417 F.3d 396, 403-04 (3d Cir. 2005); Sykes, 228 F.3d at 267.

[24] R. at 242-53.

[25] R. at 16, 18.

[26] R. at 16.

[27] See 20 CFR Part 404, Subpart P, App'x 1.

[28] R. at 18, 20-21.

claimed his ability to work was limited by pain, fatigue, the inability to use foot pedals, the need to frequently change positions, and the need to lie down for much of the day, the ALJ found that the credible medical evidence substantiated the symptoms alleged. However, after hearing testimony and reviewing the medical records, the ALJ found that Plaintiff was not completely credible with regard to the intensity, persistence and limiting effects of his pain and other symptoms.

In support of this determination, the ALJ discussed the medical records, including a report dated April 25, 2008, by treating physician Dr. Grady, who found clinical improvement despite significant disc herniation.[29] The ALJ also considered Plaintiff's testimony regarding a driving trip from Pennsylvania to Georgia, which he and his friends had taken just days before the ALJ hearing.[30] The ALJ also noted that Plaintiff had settled a workers' compensation claim in 2005 or 2006, had settled a personal injury lawsuit stemming from an accident in June 2006, and was at that time litigating a personal injury claim stemming from a car accident in the fall of 2006.[31] This, the ALJ found, raised the possibility that Plaintiff was exaggerating his symptoms for secondary gain.[32] Taking the medical evidence and testimony into account, the ALJ found "that the claimant is less than fully credible; however, in giving the claimant the benefit of the doubt I shall factor in some of claimant's reported functional limitations into the RFC."[33] The

---

[29] R. at 18, citing report at Ex. B-19F.

[30] R. at 18.

[31] R. at 18.

[32] R. at 18.

[33] R. at 20.

ALJ concluded that the record, including the portions of Plaintiff's testimony that she found credible, supported a finding that Plaintiff had the residual functional capacity to perform sedentary work with a sit/stand option, requiring no pushing or pulling with the legs, not performed at heights or near hazards, and requiring only occasional bending and climbing.[34]

      Having assessed Plaintiff's RFC, the ALJ then addressed whether Plaintiff had the RFC to perform other jobs available in the national economy. The ALJ found that during the period from July 23, 2007, through January 21, 2009, Plaintiff did have the RFC to perform other work and was not "disabled" as defined by the Social Security Act. In so deciding, the ALJ first looked at the grid applicable to individuals whose work capacity is limited to sedentary work. She noted that because transferability of job skills is not material to a determination of disability as a "younger individual" (under age 50) applying for DIB and SSI, and Plaintiff was a high school graduate who spoke English fluently, he was not disabled under the grid. However, because the ALJ credited Plaintiff's need for a sit/stand option, and therefore found Plaintiff could not perform the full range of sedentary jobs in the national economy, the ALJ did not base her decision on the grid alone.[35] Instead, the ALJ asked the VE "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."[36] The VE testified that there were several sedentary occupations Plaintiff would be able to perform, as they would allow him the option to switch positions from sitting to standing at will and did not require pushing or pulling with the legs, performance at

---

[34] R. at 20.

[35] R. at 21.

[36] R. at 21.

heights or near hazards, or more than occasional bending and climbing. These included bench assembler, parking lot cashier, and document preparer. The VE testified that there were a significant number of these positions in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled during that time period.

However, beginning on January 21, 2009, the date Plaintiff's age category changed to "closely approaching advanced age," the ALJ found, by direct application of Plaintiff's age, exertional limitations, education, and experience to the grid, that he was disabled.[37] The ALJ further found that Plaintiff has continued to be disabled from January 21, 2009 through the date of her decision.[38] Plaintiff does not challenge that favorable finding.

C. *The Report & Recommendation*[39]

After reviewing the Record, Magistrate Judge Sitarski produced a thorough Report and Recommendation ("R & R"), in which she recommended that the Court affirm the final decision of the Commissioner. Specifically, the R & R finds that substantial evidence supported the ALJ's assessment of Plaintiff's credibility and RFC, and that the ALJ had adequately considered all relevant medical evidence.

First, the R & R properly notes that the ALJ must assess the credibility of a claimant's testimony regarding pain and other subjective complaints, and if the ALJ is rejecting a claimant's testimony as lacking in credibility, that ALJ must indicate which evidence she is rejecting and

---

[37] Citing Medical-Vocational Rule 201.14.

[38] R. at 22.

[39] Doc. No. 13.

articulate her reasons, including other evidence, to support that rejection.[40] To be credible, there must be objective evidence of a medical impairment which could reasonable be expected to produce the alleged symptoms.[41] If there is such an impairment, the ALJ must assess the degree to which a claimant is accurately reporting the intensity and persistence of the pain or other symptoms, and the degree to which those symptoms are disabling.[42] Here, the R & R finds, the ALJ cited to treatment notes (and in particular to neurological findings and other test results), and to Plaintiff's testimony regarding his ability to engage in activities of daily living and his recent trip to Georgia with friends,[43] in concluding that Plaintiff's complaints regarding the intensity and persistence of pain and limitations on activities were not fully credible.[44] The R & R notes that the ALJ credited Plaintiff's subjective complaints to the extent that they were consistent with the overall record.[45] Accordingly, the R & R finds no basis to disturb the ALJ's credibility determination.

The R & R also addresses Plaintiff's argument that the ALJ's hypothetical to the VE was inadequate, as it did not state the frequency with which Plaintiff must change positions. The R & R notes "the record shows that the ALJ described an individual who must change positions

---

[40] Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

[41] 20 C.F.R. §§ 404.1529(b)-(c), 416.929 (b)-(c); Schaudeck, 181 F.3d at 433.

[42] Id.; Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

[43] The ALJ found that Plaintiff's testimony about his driving trip to Georgia contradicted other statements he had made about his inability to operate foot pedals and his inability to sit for prolonged periods of time. R. 18-20.

[44] R & R at 8-10.

[45] R & R at 10.

between sitting and standing at will, and the VE specifically acknowledged this limitation."[46] During his testimony, the VE actually reduced the estimate of assembler jobs available in the national and local economies, to account for the necessity that it be "at the bench level"[47] so that Plaintiff could sit or stand at will. The VE noted that Plaintiff could also sit or stand at will as a parking lot cashier or when performing document preparation. The R & R concluded that the "sit stand option was not limited in frequency by either the ALJ's hypothetical or the VE's response. The hypothetical individual could change position as often as needed."[48]

Finally, the R & R concludes that the ALJ's decision "provides a thorough summary of Plaintiff's medical record from 2004 through 2008."[49] The R & R notes that the ALJ did not reject any of the medical evidence, although she did not necessarily find it fully supportive of Plaintiff's claims about the severity of his subjective symptoms.[50]

*D. Plaintiff's Objections*

Plaintiff timely objected to the R & R on two grounds. Both issues had been raised in Plaintiff's initial brief and were addressed in the R & R. This Court has conducted a *de novo* review of each issue, and approves and adopts the analysis set forth in the R & R on both issues.

First, Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony regarding the extent of his subjective symptoms was not fully credible. The Court agrees that the ALJ's

---

[46] R & R at 14.

[47] R. at 48-49.

[48] R & R at 15.

[49] R & R at 12.

[50] R & R at 13.

assessment of Plaintiff's credibility was supported by substantial evidence, and therefore affirms and adopts the reasoning set forth in the R & R.

Second, Plaintiff argues that the ALJ failed to state with specificity the frequency with which Plaintiff must change positions when posing the hypothetical to the VE. The Court also agrees that the hypothetical posed to the VE properly addressed the frequency with which Plaintiff must change positions (i.e. "at will"). Even if the ALJ were unclear with regard to this limitation in posing the hypothetical to the VE, the VE's answer indicates that the VE understood the term "at will" to mean *unlimited* changes in position. The VE then identified three occupations in which Plaintiff could change positions "at will." The Court finds no evidence that the VE's opinion was unreliable, as Plaintiff argues, simply because the VE considered the need for unlimited position changes rather than position changes at set time intervals. The Court finds that the VE adequately explained why the specified jobs could be performed with an "at will" sit stand option. For example, the VE pointed out that assembly jobs performed "at the bench" can be performed while sitting or standing, and reduced her estimate of the number of assembly jobs available to reflect the need for Plaintiff to work "at the bench." The ALJ did not err in relying upon the VE's testimony, and the ALJ's ruling that Plaintiff could, before his fiftieth birthday, perform work in the national economy was supported by substantial evidence.

**IV. CONCLUSION**

For the reasons set forth in the analysis above, Plaintiff's objections are without merit. The Court has found that each of the challenged aspects of the ALJ's decision were supported by substantial evidence. For the foregoing reasons, the Court affirms the decision of the Commissioner.

An appropriate Order follows.